# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY D. TEAL<br>　　Plaintiff,<br><br>v.<br><br>1) ATOKA COUNTY MEDICAL CENTER,<br>a public trust, 2) BEVERLY PICKETT,<br>INDIVIDUALLY, and 3) PAUL REANO,<br>Individually, jointly and severally<br>　　Defendants. | Case No. 15-cv-199-SPS |

## COMPLAINT

The Plaintiff Kelly D. Teal (Plaintiff) by and through her attorney, Brendan M. McHugh, hereby submits her Complaint against Defendants Atoka County Medical Center (ACMC) Beverly Pickett (Pickett) and Paul Reano (Reano). In support thereof, Plaintiff alleges and states as follows:

1. Plaintiff is an individual and former employee of ACMC from February of 2014 until August of 2014. Plaintiff began working at ACMC in September 2013 with a traveling agency and then in January 2014, ACMC bought out her contract from the agency so that Plaintiff could come and work for ACMC as a full time employee.

2. ACMC is a hospital and public trust located in Atoka County, Oklahoma and as such is a state actor under applicable law.

1

3. Jurisdiction is proper with this Court based on 28 U.S.C. § 1331 in that Plaintiff has asserted a federal claim, specifically, 42 U.S.C. § 1983. All acts that gave rise to this action occurred within the territorial limits of the Eastern District of Oklahoma.

4. Defendant Pickett was employed at all material times with ACMC as the Chief Nursing Officer.

5. Defendant Reano was employed at all material times herein with ACMC as the Chief Executive Officer.

6. Defendants Pickett and Reano both participated in the termination of Plaintiff.

7. Prior to filing this action, Plaintiff fully exhausted her remedies under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.*

8. In June of 2014 Plaintiff was the charge nurse in the emergency department for ACMC.

9. On or about 14th 2014 an emergency delivery was done on a 15 year old who was pregnant. Problems occurred during the emergency delivery and the baby was shipped to Oklahoma City and the mother, a 15 year old child, was shipped to Durant. Tragically, the baby died as a result of complications from the delivery. Plaintiff learned that during the delivery, the mother was placed on 400 ml/hr of Pitocin drip, even though the maximum dose is 40units/hr. Further, ACMC generally does not perform deliveries and that the patient was supposed to deliver the child at Durant, and that she was in the hospital for three (3) hours, enough time to be transferred to Durant. It had previously

been decided by ACMC that the patient would deliver the child at the hospital in Durant. Pitocin is a drug that is to induce labor and stop bleeding. Plaintiff further learned that the fatal dosage may have been ordered by a nurse and not a doctor. Moreover, the medical records were charted under a different nurse's identification.

10. As part of Plaintiff's job, she is required to ensure that the medical records are accurately recorded.

11. During the week after the baby's delivery, employees were ordered to not look at the chart of the patient and no one was allowed to discuss it.

12. Plaintiff instructed the nurse on duty that night to tell the truth in any investigation and that lying in the medical records in any investigation was a crime and in violation of ACMC written policy.

13. During the next several weeks, Plaintiff spoke to several supervisors and employees about the delivery as part of an internal investigation. However, the investigation resembled more of a cover-up, including changing medical records and intimidating other employees to falsely state the facts.

14. On August 8th 2014, Plaintiff was called to the office and Defendant Pickett and Plaintiff complained to Pickett of her concerns with the delivery, including, but not limited to, that the patient had the baby there instead of another more equipped facility; that there was an internal cover-up of the delivery; that other employee's had been instructed to cover up the facts of the delivery and threatened implicitly with their job. Plaintiff informed

Pickett that no one spoke with Plaintiff as part of the investigation or other nurses with knowledge of the facts. Plaintiff advised Pickett that she was going to contact the Nursing Board, the Medical Board and the Attorney General's Office to get to the bottom of the baby's death. Pickett yelled at Plaintiff and told her an investigation was done and Plaintiff advised Pickett that it was a cover-up and not an investigation. Pickett terminated Plaintiff. Plaintiff advised Pickett that she was still turning ACMC in for an investigation and Pickett demanded that Plaintiff take a drug test, in violation of hospital policy which requires randomness or reasonable suspicion of which Pickett had neither. Moreover, Pickett had already terminated Plaintiff. Plaintiff declined Pickett's unlawful request and has demonstrable proof that she was at all times drug-free.

15. On August 9th 2014 Plaintiff advised the Chief Compliance Officer of the unlawfulness of Defendants' conduct and the actual facts of the delivery and was asked to come to ACMC for a meeting with Defendant Reano and Human Resources. Prior to meeting with Defendant Reano, Plaintiff complained to the Chairman of the Board, David Burrage and filed a written complaint with the CCO and telephoned the Attorney General's Office.

16. Defendants falsely turned Plaintiff in to the Nursing Board allegedly for refusing a drug test.

17. On August 18th 2014, Plaintiff met with Defendant Reano and he informed Plaintiff that she was fired for refusing to take a drug test.

## COUNT I

## 42 U.S.C. § 1983

17.  That Defendants Reano and Pickett violated 42 U.S.C. § 1983 by terminating Plaintiff in retaliation for the exercise of her free speech rights under the First Amendment to the U.S. Constitution and the assertion of her First Amendment rights were a significant motivating factor for Plaintiff's discharge. Further, Reano and Pickett retaliated against Plaintiff for exercising her rights by falsely reporting her to the Nursing Board. The speech engaged in by Plaintiff was not part of her assigned job duties. That Defendants Reano and Pickett are both individually liable to Plaintiff under 42 U.S.C. § 1983 for violating her clearly established constitutional rights.

## COUNT II

## OKLAHOMA CONSTITUTION

18.  Alternatively, ACMC termination of Plaintiff violates her rights of free speech under the Oklahoma Constitution, specifically Article II, Section 22 and as such, this conduct violates the public policy of the State of Oklahoma.

19.  That the termination of Plaintiff is in violation of the public policy in the State of Oklahoma and it contravenes such public policy.

## COUNT III

## MALICOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

20.  Additionally and/or alternatively, Plaintiff had a contractual relationship by virtue of her employment with ACMC as well as a prospective economic advantage

21.     Defendants Reano and Pickett maliciously interfered with Plaintiff's economic advantage and contractual relationship by acting maliciously and in bad faith and contrary to the interests of ACMC by tampering and interfering with such economic advantage and contractual relationship contractual by terminating her. Defendants Reano and Pickett were motivated by a desire to obscure their unlawful conduct and suppress Plaintiff's rights.

## COUNT IV

## BREACH OF CONTRACT

22.     As a result of Plaintiff's employment with Defendant, Plaintiff had a reasonable expectancy of continued employment through an expressed and implied employment contract. Specifically, the employee handbook, policy and procedures manual and conduct of Defendant provided Plaintiff with a reasonable expectation for continued employment by placing and implying substantive restrictions on termination. This includes an explicit progressive discipline policy as well as a provision for drug testing and other violations. Moreover, the handbook provided for mandatory reporting and provisions for non-retaliating. Plaintiff had a contract, both implied and express with ACMC. This includes a progressive discipline policy. Specifically, a discipline policy for violations and a anti-retaliation policy. Defendant breached this by terminating Plaintiff contrary to progressive discipline, not following written policy and retaliating against Plaintiff.

## CONCLUSION

As a result of Defendant's conduct, Plaintiff has sustained substantial damages in excess of $75,000.00.Defendants Reano and Pickett acted with reckless disregard for the rights of Plaintiff, intentionally and with malice and with conscious disregard of the federally secured rights of Plaintiff and as such, punitive damages in excess of $75,000.00 should be assessed against them. That Plaintiff should be awarded a reasonable amount of attorney fees and costs incurred herein.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests an award of actual damages in excess of $75,000.00, an award of punitive damages in excess of $10,000.00, the costs of this action and any other and further relief this Court deems proper.

S/Brendan M. McHugh

Brendan M. McHugh, OBA #18422
Attorney for Plaintiff
P.O. Box 1392
Claremore, OK 74018
Office (918) 343-1773
Direct 918-500-7774
Fax: (918) 803-4910
Email Brendan@lawinok.com

**JURY TRIAL DEMANDED**

**ATTORNEY LIEN CLAIMED**